**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

COCKERELL OIL PROPERTIES, LTD, )
on behalf of itself and all )
others similarly situated, )
)
          Plaintiff, )
)
v. ) Case No. CIV-16-135-KEW
)
UNIT PETROLEUM COMPANY, )
an Oklahoma corporation, )
)
          Defendant. )

## **OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket Entry #87). Plaintiff Cockerell Oil Properties, Ltd. ("COP") is a Texas limited partnership originally formed with the late Edward Cockerell ("Cockerell") as the general partner and his wife, Kay Cockerell, as the limited partner. Cockerell purchased an overriding royalty interest in certain oil and gas leases – in particular, the Reed #6-22 - and assigned those rights to COP on April 1, 2010. Cockerell informed Defendant Unit Petroleum Company ("UPC") of the assignment by correspondence dated April 21, 2010. On March 11, 2019, Cockerell and COP filed a document of record in the LeFlore County Clerk's office entitled "Clarification Assignment of Overriding Royalty Interest."

BP America Production Company ("BP"), as operator of the Reed #6-22 well, remitted payment to UPC in accordance with its working

interest which, in turn, distributed the overrides to COP, among others. COP contends that the following payments were made by UPC in an untimely fashion in accordance with the requirements of the Oklahoma Production Revenue Standards Act ("PRSA")[1]:

- Check No. 1544215 Issued October 29, 2010, $101.51;
- Check No. 1544215, Issued October 29, 2010, $114.01;
- Check No. 2353066, Issued April 30, 2015, $770.74;
- 61 Checks, Issued Between February 28, 2011 and February 29, 2016, in varying amounts as listed in Cockerell's Amended Disclosures.

The PRSA provides deadlines for the payment of oil and gas proceeds as follows:

> B. Except as otherwise provided in this section:
>
> 1. Proceeds from the sale of oil or gas production from an oil or gas well shall be paid to persons legally entitled thereto:
>
> a. commencing not later than six (6) months after the date of first sale, and
>
> b. thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold.
>
> 2. Notwithstanding paragraph 1 of this subsection, royalty proceeds from the sale of gas production from an oil or gas well remitted to the operator pursuant to

---

[1] *See* Okla. Stat. tit. 52 §570, *et seq.*

subsection B of Section 570.4 of this title shall be paid to persons legally entitled thereto:

a. commencing not later than six (6) months after the date of first sale, and

b. thereafter not later than the last day of the third succeeding month after the end of the month within which such production is sold; provided, however, when proceeds are received by the operator in its capacity as a producing owner, the operator may pay the royalty share of such proceeds to the royalty interest owners legally entitled thereto at the same time that it pays the royalty proceeds received from other producing owners for the same production month, but not later than the last day of the third succeeding month after the end of the month within which such production was sold.

Okla. Stat. Ann. tit. 52, § 570.10.

Should the operator fail to pay the interest holder the proceeds to which they are entitled in a timely manner as set forth above, the PRSA provides for the payment of interest on the untimely payments as follows:

D. 1. Except as otherwise provided in paragraph 2 of this subsection, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods provided in this section, that portion not timely paid shall earn interest at the rate of twelve percent (12%) per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid.

2. a. Where such proceeds are not paid because the title thereto is not marketable, such proceeds shall earn interest at the rate of

> (i) six percent (6%) per annum to be compounded annually for time periods prior to November 1, 2018, and (ii) the prime interest rate as reported in the Wall Street Journal for time periods on or after November 1, 2018, calculated from the end of the month in which such production was sold until such time as the title to such interest becomes marketable or the holder has received an acceptable affidavit of death and heirship in conformity with Section 67 of Title 16 of the Oklahoma Statutes, or as set forth in subparagraph b of this paragraph. Marketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association.
>
> b. Where marketability has remained uncured, or the holder has not been provided an acceptable affidavit of death and heirship in conformity with Section 67 of Title 16 of the Oklahoma Statutes, for a period of one hundred twenty (120) days from the date payment is due under this section, any person claiming to own the right to receive proceeds which have not been paid because of unmarketable title may require the holder of such proceeds, or the holder of such proceeds may elect, to interplead the proceeds and all accrued interest into court for a determination of the persons legally entitled thereto. Upon payment into court the holder of such proceeds shall be relieved of any further liability for the proper payment of such proceeds and interest thereon.
>
> Okla. Stat. Ann. tit. 52, § 570.10.

It is on the basis of these statutes and UPC's actions in paying proceeds to COP that this action was commenced by COP on March 11, 2016 in the District Court in and for LeFlore County, Oklahoma. The action was removed by UPC to this Court on April 13, 2016.

**Standard on Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).  This Court will address the several issues raised by UPC in the subject Motion in turn.

**Recovery for Payment in Check No. 2353066**

UPC first challenges COP's ability to recover for the payment it received but which was represented in Check No. 2353066 made out to Edward Cockerell as an individual. The check was issued on April 30, 2015 as an "adjustment to decimal interest" for production for the period September of 2009 through March of 2010 on the Reed #6-22 – a period prior to the filed assignment of Cockerell's interest to COP. UPC contends COP lacks the requisite standing to assert a claim under the PRSA for unpaid interest since it was not the record holder of the interest at the time the interest accrued. COP claims all was essentially cured with the Clarification which was filed after this lawsuit was initiated.

The original assignment provided for Cockerell to

> assign, transfer and convey unto COCKERELL OIL PROPERTIES, LTD. . . . all of [Cockerell's] right, title and interest in and to the overriding royalty interest . . . derived under the oil and gas leases, pooling or unitization agreements, assignments or other contracts or agreements of a similar nature which created the Overriding Royalty as described in Exhibit "A" attached hereto and made a part hereof, limited to the lands and depths reflected on Exhibit "A", such oil and gas leases, pooling or unitization agreements, assignments or other contracts or agreements hereafter collectively referred to as the "Leases", subject to all restrictions, limitations, conditions or reservations described herein, in Exhibit "A", in the Leases or in any of the documents or instruments referred to herein.[2]

---

2 *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary

On March 11, 2019, three years after the filing of this action, Cockerell and COP filed a Clarification of record with the LeFlore County Clerk. This document indicated that it was the intent of the parties that the overriding royalty interest be assigned included "all past, present and future rights to revenue from oil and gas production proceeds, any statutory interest that might become or has become due on late payments and any claims in contract or tort associated therewith. . . ."[3]

Under Oklahoma law, the intentions of the parties is construed from the four corners of the document of conveyance. <u>Mercury Investment Company v. F.W. Woolworth Company</u>, 706 P.2d 523, 529 (Okla. 1985). The original assignment did not reference the assignment of past or future rights to accrued interest and, therefore, it cannot be found that the parties intended from the express language of the assignment that the right to such interest was reassigned to COP. The subsequent "Clarification" to include those rights is grossly untimely since the standing of the parties to bring suit is determined at time of the commencement of the action. <u>S. Utah Wilderness All. v. Palma</u>, 707 F.3d 1143, 1153 (10th Cir. 2013)("standing is determined at the time the action is

---

Judgment, Exh. K.

3 *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Exh. L.

brought . . . and we generally look to when the complaint was first filed, not to subsequent events" to determine if a plaintiff has standing." Id. citing Mink v. Suthers, 482 F.3d 1244, 1253-54 (10th Cir. 2007)(remaining citations omitted)). This Court concludes, therefore, that the payment associated with Check No. 2353066 cannot form the basis for an action by COP under the PRSA.

**Statute of Limitations Pertaining to Check No. 1544215**

UPC next contends COP cannot pursue a violation of the PRSA's interest provisions with regard to Check No. 1544215 dated October 29, 2010 since the PRSA contains a five year statute of limitations and COP's action was initiated on March 16, 2016.4 UPC's argument ignores the various theories of tolling recognized under Oklahoma law, including the discovery rule which allows the applicable statute of limitations to be "tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." Resolution Trust Corp. v. Grant, et al., 901 P.2d 807, 813 (Okla. 1995). Moreover, equitable estoppel may also toll a statute of limitations upon a showing that COP 1) made a false representation or concealment of facts; 2) with knowledge, actual or constructive of the real facts; 3) the party to whom the false

---

4 The applicable provision states "[F]or purposes of the Production Revenue Standards Act, the statute of limitations on actions brought pursuant to the provisions of the Production Revenue Standards Act shall be five (5) years from the date the cause of action shall have accrued, provided however, nothing shall create, limit or expand any statute of limitations applicable to production occurring prior to September 1, 1992." Okla. Stat. Ann. tit. 52, § 570.14.

representation is made or from whom the facts are concealed must have been without knowledge, or the means of knowledge, of the real facts; 4) the misrepresentation or concealment must have been made with the intention that it should be acted upon (or to induce forbearance from acting); and the party to whom the misrepresentation was made or from whom facts are concealed must have relied on, acted upon or forborne from acting as a result to his prejudice. *See* Texas Co. v. Pettit*,* 220 P.956, 959 (Okla. 1923). The misrepresentation or concealment may arise from silence of a party who is under a duty to speak and the intention that the misrepresentation or concealment be acted upon (or induce forbearance from acting) may be inferred from circumstances, but the party in whose favor the estoppel is invoked must have been misled into doing something he would not have done (or not doing something he would have done) but for such silence. Id*.* A party "relying upon estoppel must have exercised such reasonable diligence as the circumstances of the case require, and if he conducts himself with a careless indifference to the means of information reasonably at hand, or ignores highly suspicious circumstances, which should warn him of danger or loss, he cannot invoke the doctrine of estoppel." Rosser v. Texas Co.*,* 48 P.23d 327, 330-31 (Okla. 1935).

Cockerell, who is recognized as both the original owner of the interest at issue in this case and as the general partner of

COP as the later assignee of the interest, testified that he believed UPC was representing that they were paying in accordance with the applicable law every time they cut a check to him.5 Moreover, the evidence indicates that UPC acted knowingly and with intent in failing to pay the statutorily mandated interest on late payments unless an interest holder requested an interest payment in contravention of the PRSA.6 Questions of fact exist on the facts surrounding the tolling of the statute of limitations to preclude summary judgment at this stage. Such questions include but are not limited to when COP discovered the alleged underpayment by UPC and the diligence of COP in utilizing the avenues of discovery available to it to determine whether each payment was correct.7 Consequently, summary judgment precluding recovery based upon Check No. 1544215 and any other payment outside of the five year statute of limitations period in the PRSA is not appropriate at this time.

---

5 Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Exh. D, p. 42, ll. 14-25.

6 Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Exh. F, p. 19, ll. 11-25, p. 20, ll. 1-10; Exh. G, p. 13, ll. 20-25, p. 14, ll. 1-9; Exh. H, p. 23, ll. 14-17; Exh. I, p. 43, ll. 9-15.

7 This finding is not intended to address the effect of the statute of limitations of each claim in the putative class upon class certification. *See* Cline v. Sunoco, Inc., 2019 WL 4879187, at *8 (Oct. 3, 2019) ("To toll the statute of limitations, the Court would need to perform individual inquiries into the reasonable diligence of each class member that would defeat the predominance requirement under Rule 23(b)(3). Because Cline has not adequately rebutted that conclusion and has not defined the class period, the Court will limit the class claims to those arising on or after July 7, 2012.").

**Violations of the PRSA from February, 2011 Forward**

UPC asserts that the list of payments which COP relies upon to establish further violations of the interest requirements of the PRSA beginning in February of 2011 were made timely. UPC, therefore, concludes that no interest was due under the express terms of the PRSA. Conspicuously missing from the analysis of the parties is a specific calculation on each payment demonstrating that it was paid late or paid on time in accordance with the specific provisions of the PRSA. While UPC included Plaintiff's Amended Disclosures and the attachment identified as Exhibit 1 with its summary judgment motion, the printout in the exhibit does not include any information concerning the timeliness of the litany of various payments made by UPC.[8]

UPC contends that the payments were made by the end of the first month following the month in which UPC received the proceeds from BP and that this payment was timely under the provisions of the PRSA.[9] In support of this conclusion, UPC references the

---

[8] Defendant's Motion for Summary Judgment, Exh. 14.
[9] *See* Okla. Stat Ann. tit. 52 § 570.10(E)(2)(b) & (c) which provide:

2. When royalty proceeds on gas production are remitted pursuant to subsection B of Section 570.4 of this title:

\* \* \*

b. A producing owner receiving royalty proceeds that causes such proceeds to be received by the royalty interest owner legally entitled thereto or by the operator for distribution to the royalty interest owner legally entitled thereto not later than the end of the first month following the month in which proceeds for such production was received by the producing owner from the purchaser shall not be liable for interest on such proceeds.

affidavit of Kathy Hatfield, UPC's manager of revenue accounting. Ms. Hatfield states that

> Every so-called late proceeds payment was disbursed by UPC to Cockerell by the end of the first month following the month in which UPC actually received its share of the Reed #6-22 proceeds from BP, except for the 2010 corrections described above, These timely payments include every payment on Exhibit 1 of Cockerell's Amended Initial Disclosures.[10]

COP does not specifically address UPC's argument on the timeliness of these payments but instead appears to rely generally upon the repeated deposition testimony of various UPC officials that it was the policy of UPC to not pay interest on late payments unless and until an interest holder demanded such interest in writing. In direct response to UPC's Statement of Facts Nos. 16 and 23 which were pertinent to the question of the timeliness of the Exhibit 1 payments, COP only denied these facts, noting that UPC had admitted a policy of not paying interest on untimely payments and referencing its own Supplemental Response to UPC's Interrogatories which identifies the payments as "[a]ll payments

---

c. An operator receiving royalty proceeds that causes such proceeds to be received by the royalty interest owner legally entitled thereto, not later than the end of the first month following the month in which proceeds for such production was received by the operator from the purchaser or producing owner, shall not be liable for interest on such proceeds.

\* \* \*

10  Defendant's Motion for Summary Judgment, Exh. 11, p. 2, ¶ 6.

identified in Exhibit 1 to Plaintiff's Amended Disclosures."[11] This is not sufficient to counter UPC's argument on the timeliness of the specific payments represented in Exhibit 1 of COP's Amended Disclosures.

COP represents Ms. Hatfield's affidavit as "new" and "self-serving". However, to invalidate its evidentiary sufficiency, this Court would have to conclude that the affidavit was not based upon personal knowledge and set forth facts that would not be admissible. Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995)(quotation omitted). "[C]onclusory and self-serving affidavits are not sufficient." Id. Ms. Hatfield represents that she provides the affidavit from personal knowledge in her capacity as the manager of revenue accounting for UPC and attests to admissible facts which are not contested by similar evidence by COP. As a result, summary judgment is appropriate for those payments represented in Exhibit 1 of COP's Amended Disclosures as those payments were timely under the PRSA.

### Fraud Claim

UPC contends that COP lacks evidence to support its fraud claim. COP states that the its evidence that UPC provided checks and check stubs which represented that the recipient was receiving all that it was owed, including that which was due under the PRSA,

---
[11] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, p. 4; Exh. E, p. 7.

when UPC knew that it owed interest was sufficient to support a claim for fraud. "A[n actual] fraud claim require[s] Plaintiff to prove (1) Defendant made a material representation; (2) that was false; (3) and made knowingly or recklessly, without regard for its truth; (4) with the intent that it be acted upon; and (5) Plaintiff was injured as a result." Alexander v. Smith & Nephew, P.L.C., 90 F. Supp. 2d 1225, 1235 (N.D. Okla. 2000), *citing* McCain v. Combined Communications Corp. of Okla., Inc., 975 P.2d 865, 867 (Okla. 1998).

At least in regard to the single payment remaining in this action, a question of fact exists as to whether UPC acted knowingly and with intent in failing to disclose and failing to actually pay interest as required by the PRSA. It is certainly arguable that the representation in the payment that UPC is paying all that is owed when it knows otherwise could be actionable if COP detrimentally relied upon the representation. UPC's assertion that Cockerell as an oil and gas attorney should have been charged with checking the provisions of the PRSA and insuring UPC complied with its interest requirements. This only accentuates the question of fact surrounding the alleged fraud and precludes summary judgment.

### Exclusive Remedy of the PRSA

UPC asserts that the PRSA represents the exclusive remedy for any violation of its terms and, therefore, COP cannot pursue the

various other forms of relief it seeks. UPC first contends that COP cannot recover punitive damages because the Oklahoma Supreme Court concluded that violations of the PRSA are not statutorily based but arise as a result of the contractual obligation to pay proceeds to the interest holder. *See* Purcell v. Santa Fe Minerals, 961 P.2d 188, 192-93 (Okla. 1998). Oklahoma's punitive damage scheme only permits recovery for actions not sounding in contract. Okla. Stat. tit. 23 § 9.1.

The issue of the availability of punitive damages and the exclusivity of the PRSA is addressed in the Energy Litigation Reform Act (the "Reform Act"). The Reform Act provides

> Except for the right to enforce lien rights under private agreement or under Sections 548 through 549.12 of Title 52 of the Oklahoma Statutes and except where specific remedies are provided by private agreement, and as long as paragraph 1 of subsection D of Section 570.10 of Title 52 of the Oklahoma Statutes provides for an interest rate equal to or greater than twelve percent (12%) compounded annually, **the Production Revenue Standards Act shall provide the exclusive remedy to a person entitled to proceeds from production for failure of a holder to pay the proceeds within the time periods required for payment**. The interest amounts set forth in subsection D of Section 570.10 and the remedies set forth in subsection C of Section 570.14 of Title 52 of the Oklahoma Statutes, with the term "actual damages" as used therein being limited to the proceeds due and the interest as provided in subsection D of Section 570.10 of Title 52 of the Oklahoma Statutes, are deemed to be adequate remedies for failure to pay proceeds within the time periods required for payment and no other penalty or damages shall be

> recoverable in any litigation involving a claim for unpaid or underpaid proceeds from production **including, without limitation, punitive or exemplary damages or disgorgement damages, unless there shall be a determination by the finder of fact upon clear and convincing evidence that the holder who failed to pay such proceeds did so with the actual, knowing and willful intent: (a) to deceive the person to whom the proceeds were due, or (b) to deprive proceeds from the person the holder knows, or is aware, is legally entitled thereto**.
>
> Okla. Stat. Ann. tit. 52, § 903 (emphasis added by this Court).

Clearly, an exception exists under the Reform Act for the availability of a punitive damage claim, should COP make the appropriate showing. This Court acknowledges the distinction drawn by UPC between the failure to pay "proceeds" and the failure to pay "interest", terms not expressly defined by either the PRSA or the Reform Act. However, it is the failure to timely pay "proceeds" that leads to the recovery of "interest." The evidence indicates that persons acting on behalf of UPC knowingly intended "to deprive proceeds from [COP]" to which COP was legally entitled for a period of time, which then entitled COP to interest. The question of whether COP is entitled to punitive damages based upon these actions and this knowledge is best left to the trier of fact as the Reform Act contemplates.

UPC also relies upon the Reform Act to contend COP's claim

16

for disgorgement is barred as the PRSA represents COP's exclusive remedy. This contention is also addressed by the express language of the Reform Act which allows the recovery of other damages "without limitation", including punitive damages and disgorgement damages. Again, this determination is in the purview of the trier of fact at trial.

The remaining equitable claims for an accounting and injunctive relief are not addressed by the Reform Act. "The long-standing rule in Oklahoma is that a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law." Krug v. Helmerich & Payne, Inc., 320 P.3d 1012, 1022, *as corrected* (Feb. 24, 2014) *quoting* Harvell v. Goodyear Tire & Rubber Co., P.3d 1028, 1035 (Okla. 2006). The PRSA and Reform Act provide adequate remedies at law for the violation of the payment provisions. *See also* Strack v. Cont'l Res., Inc., 405 P.3d 131, 137 (Okla. Ct. Civ. App. 2017)("'. . . a plaintiff may not pursue an equitable remedy when the plaintiff has an adequate remedy at law.' . . . Accordingly, based on our review of the record and applicable law, Plaintiffs have not shown they are entitled to the requested accounting under the PRSA.") As a result, COP's equitable claims for an accounting and injunctive relief cannot be maintained. UPC is entitled to summary judgment on these claims.

**Interest on Interest**

As a final assertion, UPC asserts that COP may not recover interest on interest. That is, the PRSA provides that the interest holder is entitled to 12% interest for the late payment of oil and gas proceeds "per annum to be compounded annually, calculated from the end of the month in which such production is sold until the day paid." Okla. Stat. tit. 52 § 570.10(D)(1). Nothing in this provision or any other legal authority provided to this Court provides for the collection of "interest on interest" but rather only 12% per annum until the proceeds are paid. To the extent COP opposes this position, UPC is entitled to summary judgment as a matter of law on this issue.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Docket Entry #87) is hereby **GRANTED**, in part, in that COP's claims for (1) recovery associated with Check No. 2353066; (2) recovery for payments represented in Exhibit 1 to Plaintiff's Amended Disclosures; (3) accounting and injunctive relief; and (4) recovery of interest on interest are hereby **DISMISSED**. The remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this 28th day of February, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE